IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


LAEL BROWN, LAVERNE WRIGHT-OCHOA,
CHARLES BROWNE and ROBERT WRIGHT

          Plaintiffs,

v.                          //   CIVIL ACTION NO. 1:10CV110
                                      (Judge Keeley)


ANTHONY PARTIPILO, TODD TERRY and
AMERICA'S CRIMINAL DEFENSE GROUP,
a Professional Law Corporation,

          Defendants.


**<u>MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS (DKT. 3)</u>**

        The defendants in this case, Anthony Partipilo ("Partipilo"),
Todd Terry ("Terry"), and America's Criminal Defense Group
("ACDG"), filed a motion to dismiss, relying on Federal Rule of
Civil Procedure 12(b)(3) and a forum selection clause in their
contract with the plaintiffs, Lael Brown ("Brown"), Laverne Wright-
Ochoa ("Wright-Ochoa"), Charles Browne ("Browne"[1]), and Robert
Wright ("Wright"). Because the defendants – an attorney, his law
firm, and its agent – failed in their professional duty to explain
the forum selection clause to their clients, and because
enforcement of the provision would offend strong principles of
public policy of the State of West Virginia, the Court **DENIES** the
motion to dismiss (dkt. 3).

--------

        [1]Charles Browne spells his surname with an "e", while his son,
Lael Brown, does not.

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS**

### I. FACTUAL BACKGROUND

In 2006, authorities charged Lael Brown with several felonies, including burglary, distribution of marijuana, and threatening a police officer, in the Circuit Court of Monongalia County, West Virginia ("circuit court"). Brown, who had recently moved to Monongalia County from New York City with his father, Charles Browne, qualified for court-appointed counsel. The circuit court appointed Cheryl Warman ("Warman"), a member of the West Virginia State Bar, to represent Brown. Warman and Brown reached a plea agreement with the state, and the circuit court scheduled a plea hearing for June 18, 2008.

Prior to that hearing, however, Brown's mother, Laverne Wright-Ochoa, sought to retain counsel for her son. From her home in New York, she discovered the website of ACDG. As it still does today, ACDG's website advertised that the firm was nationwide and provided criminal defense in all fifty states and the District of Columbia.[2] ACDG's website does not list a mailing or physical address, soliciting contact only through email or a toll-free telephone number. In reality, ACDG is a California firm and

---

[2]Http://www.americascriminaldefense.com/html/about.html (last visited Oct. 7, 2010)("With attorneys throughout the nation, America's Criminal Defense Group is able to provide personal legal representation wherever you live.").

<u>**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS**</u>

Partipilo, its Managing Director, is a member of the California Bar.[3]

After Wright-Ochoa contacted ACDG and spoke with Todd Terry, its non-attorney Case Manager, the firm offered to represent Brown in exchange for a nonrefundable flat fee of $27,900. Browne, Wright-Ochoa, and Robert Wright (Wright-Ochoa's father and Lael Brown's grandfather) pooled their funds to pay this fee and retain ACDG. ACDG then sent copies of a retainer agreement to all three. Wright signed one copy of the contract, Wright-Ochoa another. Charles Browne apparently never signed his copy of the contract, but did initial numerous provisions and authorized several payments from his credit card. Lael Brown never signed the contract. Instead, the signature line for the criminal defendant reads "In Custody."

On June 18, 2008, the scheduled date of Brown's plea hearing, ACDG contacted Warman to advise her that it had been retained to represent Brown. Further, ACDG's representative instructed Warman to request a continuance as its counsel had a prior engagement in

---

[3]<u>See</u> <u>Lane v. W. Va. State Bd. of Law Examiners</u>, 295 S.E.2d 670 (W. Va. 1982)(denying admission to practice without examination to California attorney on grounds that admission requirements in California are not "substantially the same" as West Virginia's standards, specifically California provisions allowing study at unaccredited or correspondence schools).

federal court that day. Warman confirmed with Brown that he desired the representation secured by his mother, and, on Warman's request, the circuit court continued the case.

Also on June 18, ACDG entered into a contract with John Brooks ("Brooks"), an attorney practicing in Monongalia County. Under this "Of Counsel" agreement, Brooks would represent Brown in association with ACDG. Brooks had apparently never worked with ACDG before. He took over the case, however, reached a plea agreement with the state, and received approximately $5,400 from ACDG for his services. ACDG never entered an appearance in the case, nor did Brooks make a pro hac vice motion on behalf of Partipilo or any other attorney from ACDG. See West Virginia Supreme Court of Appeals, Rule 8.0, Admission pro hac vice, Rules for Admission to the Practice of Law (1989)(as amended).[4] Furthermore, Brooks never entered into a separate contract with Brown or any of his relatives.[5]

---

[4]Http://www.state.wv.us/wvsca/Bd of Law/lawprac.htm.

[5]Brooks is not a party to this case, but his agreement to serve as ACDG's co-counsel clearly created an attorney-client relationship with Brown. His professional obligations, therefore, were no less firmly established than the defendants'.

MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS

### II. PROCEDURAL HISTORY

The plaintiffs filed this action in the circuit court. The defendants removed the case to this Court on diversity grounds. Jurisdiction is proper as all plaintiffs are diverse from all defendants, and, based on the contractual and negligence claims asserted and the plaintiffs' demand for punitive damages, the amount in controversy exceeds $75,000.

The complaint asserts four causes of action. First, the plaintiffs claim that ACDG's website and the statements by Terry to Wright-Ochoa fraudulently induced them into signing the contract, and contained material falsehoods about the nature of ACDG's business operations and its potential representation of Lael Brown.

Second, they assert that the defendants breached their contract by not providing a team of experienced attorneys as promised and not pursuing a jury trial. Instead, they allege, Brooks reached the same plea agreement offered to Warman.

Third, they seek recovery of the fees paid to ACDG on the grounds that the charges were unreasonable under the West Virginia Rules of Professional Conduct. They further allege that the fees in this case were so unconscionable as to support an award of their attorney's fees and costs in this civil case.

Finally, the plaintiffs allege that the representation provided by ACDG was negligent. Specifically, they contend that the defendants neglected their duty to investigate the case, to advise and consult with Brooks, and to raise a mental illness defense or mitigation argument.

The defendants seek dismissal of this action based on a choice of law and forum selection clause in the contract. Specifically, the contract provides that the "agreement shall be interpreted under the laws of the state of California and jurisdiction and venue shall be exclusively in the county of Los Angeles in the state of California." (Dkt. 4-3 at 2.)[6]

### III. CHOICE OF VENUE BY PARTIES' AGREEMENT

In general, parties may agree to reasonable venue provisions in a contract. See Caperton v. A.T. Massey Coal Co., 679 S.E.2d 223, 235 (W. Va. 2008)("While forum-selection clauses historically were disfavored, such is no longer the case, so long as the clause is fair and reasonable[.]")(rev'd on other grounds, 129 S.Ct. 2252 (2009)). The parties agree that, whether analyzed under West

---

[6]Except as noted, the Court does not address whether California's substantive law will apply to the merits of this case. However, to the extent that the defendants seek to evade the laws and rules regulating attorneys in this state, they will find no protection in this Court.

<u>**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS**</u>

Virginia, California, or federal law, the enforceability of a choice of venue provision is subject to substantially identical analysis. <u>See</u> <u>Sheldon v. Hart</u>, 2010 U.S. Dist. LEXIS 1602, *6 (N.D.W. Va. Jan. 8, 2010)(noting inconsistent Fourth Circuit precedent on choice of law question, but that test and result are identical under either West Virginia or federal law)(<u>reconsideration denied</u>, 2010 U.S. Dist. LEXIS 28769 (N.D.W.Va. Mar. 25, 2010)).[7]

First, courts presume that a mandatory forum selection clause,[8] if it covers all of the plaintiff's claims, is presumptively enforceable. <u>Allen v. Lloyd's of London</u>, 94 F.3d 923, 928 (4th Cir. 1996). If the claims are covered by the clause, a court should invalidate such agreements only

> if (1) their formation was induced by fraud or overreaching; (2) the complaining party "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4)

---

[7] In <u>Sheldon</u>, this Court upheld a clause requiring a patient to bring her suit in Germany, where, according to the facts in the case, she had traveled to undergo back surgery.

[8] Unlike the contract language in this case, some forum selection clauses merely provide the opportunity to litigate in a chosen jurisdiction, without restricting suits elsewhere. These are known as permissive, rather than mandatory, forum selection clauses. <u>Caperton</u>, 679 S.E.2d at 237.

their enforcement would contravene a strong public policy
of the forum state.

Id. (citing Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 595

(1991); The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 92 (1972)).

In considering a motion under Rule 12(b)(3) based on a forum

selection clause, the Court may "freely consider evidence outside

the pleadings." Sucampo Pharms., Inc., v. Astellas Pharma, Inc.,

471 F.3d 544, 550 (4th Cir. 2006).

West Virginia has adopted the test set forth by the Second

Circuit in Phillips v. Audio Active Limited, 494 F.3d 378 (2d Cir.

2007):

> Determining whether to dismiss a claim based on a
> forum[-]selection clause involves a four-part analysis.
> The first inquiry is whether the clause was reasonably
> communicated to the party resisting enforcement.... The
> second step requires [classification of] the clause as
> mandatory or permissive, i.e., ... whether the parties
> are required to bring any dispute to the designated forum
> or [are] simply permitted to do so. [The third query]
> asks whether the claims and parties involved in the suit
> are subject to the forum selection clause....
>
> If the [forum-selection] clause was communicated to the
> resisting party, has mandatory force and covers the
> claims and parties involved in the dispute, it is
> presumptively enforceable.... The fourth, and final, step
> is to ascertain whether the resisting party has rebutted
> the presumption of enforceability by making a
> sufficiently strong showing that "enforcement would be
> unreasonable [and] unjust, or that the clause was invalid
> for such reasons as fraud or overreaching."

MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS

Caperton, 679 S.E.2d at 236 (quoting in full Phillips, 494 F.3d at 383-84)(alterations in original). The first factor – whether the clause was adequately communicated to the party seeking to avoid its effect – has special relevance in this case, where the contract was drafted and solicited by an attorney who holds a duty to explain the provisions of such an agreement to his potential client.

### IV. ANALYSIS

**A.   The forum selection clause is mandatory and covers the plaintiffs' claims.**

The plaintiffs argue that, despite its relatively broad language, the forum selection clause does not cover all the claims of all the plaintiffs. They argue that, because Lael Brown and Charles Browne never signed the contract, its provisions are unenforceable against them.

However, Lael Brown was the intended beneficiary of the contract, and thus subject to its terms. See Watkins v. M/V LONDON SENATOR, 112 F.Supp.2d 511, 520 (E.D.Va. 2000)(citing TAAG Linhas Aereas de Angola v. Transamerica Airlines, Inc., 915 F.2d 1351, 1354 (9th Cir. 1990); 4 Corbin on Contracts § 819, p. 277 (1951)). Similarly, although Charles Browne's signature does not appear on the final page of the parties' agreement, he initialed several

provisions and authorized payments from his credit card. Clearly, as the plaintiffs admit, he manifested his assent to the agreement, and thus is bound by its terms. <u>See</u> Restatement (Second) of Contracts § 50 (1981). Indeed, as the defendants note, if he were not bound by the contract he would have no right to recover under it.

The clear language of the contract at issue establishes that exclusive jurisdiction would be vested in the courts of California. Accordingly, the clause is a mandatory, not permissive, forum selection provision.

Finally, although the plaintiffs assert claims in tort and contract, all of their causes of action arise from the formation and performance of the agreement. Accordingly, there can be no colorable debate that the mandatory forum selection clause applies to the entirety of the complaint.

**B. The forum selection clause was not procured through fraud.**

The plaintiffs argue that the clause must be disregarded because ACDG and its agents fraudulently induced them into the agreement. The defendants correctly note that, for a forum selection clause to be invalid for fraud, the clause itself, not the agreement, must have been so nefariously obtained. <u>Scherk v. Alberto-Culver Co.</u>, 417 U.S. 506, 519 (1974); <u>Sheldon</u>, 2010 U.S.

<u>**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS**</u>

Dist. LEXIS 1602 at *5. Although the plaintiffs argue that the clause was inadequately explained to them, <u>see</u> IV-B, <u>infra</u>, they produce no evidence that the defendants actively misrepresented or concealed the provision. Accordingly, the Court will not set the clause aside on this basis.

**C. Litigation in California would not deny the plaintiffs a remedy.**

Nor may the Court disregard the forum selection clause based on the second or third <u>Allen</u> factors. Although bringing suit in Los Angeles might prove difficult or more expensive for the plaintiffs, they do not set forth any specific reasons why such a restriction would "for all practical purposes" deny them the chance to pursue their claims. <u>The Bremen</u>, 407 U.S. at 18. Mere inconvenience will not suffice to invalidate a forum selection clause. <u>See</u> <u>Baker v. Adidas America, Inc.</u>, 335 Fed.Appx. 356 (4th Cir. 2009)(unpublished)(holding North Carolina college student to agreement to litigate in Amsterdam). Nor do the plaintiffs establish that California's substantive law is so unfair as to deny them a remedy.

**D.    The defendants failed to adequately communicate the nature of the forum selection clause to the plaintiffs.**

The plaintiffs argue that the language of the forum selection and choice of law provisions in their contract is not sufficiently

clear to put a lay reader on notice that he would be barred from bringing suit anywhere outside of California. Further, they argue that, unlike several other provisions in the contract, the forum selection clause did not require the signer to place his initials beside that paragraph. Finally, they contend that, in the context of an attorney-client contract, the lawyer has a professional obligation to ensure that his potential client fully understands each provision.

The provision is not inherently misleading, nor is it set in less conspicuous text than the remainder of the contract. It is not, however, written in the type of plain English that a lawyer could reasonably assume any criminal defendant or his family would understand without explanation. The words "jurisdiction and venue," while not ambiguous, are not in common usage outside of the legal world. Moreover, the apparent failure of any ACDG attorney to explain the contract and the plaintiffs' averments that none of them understood the provision's consequences supports a conclusion that the provision was not adequately communicated to the plaintiffs. Under the first element of Caperton, therefore, the clause must be set aside.

When negotiating a contract for representation, an attorney necessarily has a conflict of interest. The lawyer is desirous of

fair compensation for his services, but must keep in mind that, even at the outset of the relationship, he is also his client's fiduciary. Thus, the lawyer must carefully ensure that the client understands the nature of the contract and the representation. <u>See</u> Restatement (3d) of the Law Governing Lawyers, § 18, cmt. d (2000) ("[The] law protects clients who enter into such contracts")(citing Restatement (2d) of Agency, § 390, cmt. e (1958)("[I]n the case of attorney and client, the creation of the relation involves peculiar trust and confidence, with reliance by the principal upon fair dealing by the agent[.] . . . [T]he attorney is under a duty to deal fairly with the principal in arranging the terms of the employment.")).

In <u>Falk & Fish, L.L.P. v. Pinkston's Lawnmower and Equipment, Inc.</u>, 317 S.W.3d 523 (Tex.App-Dallas, July 20, 2010), the Texas Court of Appeals invalidated a forum selection clause in a contract between a Texas law firm and North Carolina business. In the contract, the firm inserted the following language: "[y]ou agree our relationship and our agreement is controlled by Texas law, and the applicable courts of Dallas, Texas shall be the for a [sic] for all attorney-client disputes." <u>Id.</u> at 526-537 (brackets and modifications in orginal). The words "for a" apparently were intended to read "forum," or perhaps the plural "fora." The Court

held that the law firm was required to explain the contract and any

provisions "diverging from a reasonable client's expectations." Id.

at 529 (quoting Restatement (3d) of the Law Governing Lawyers, § 18

cmt. h.). An attorney's obligations when negotiating his contract

are different from any other businessman's in an arms-length

transaction:

> An attorney has a special responsibility to maintain the
> highest standards of conduct and fair dealing when
> contracting with a client or otherwise taking a position
> adverse to the client's interests. To place the burden of
> clarifying attorney-client agreements on the attorney is
> justified, not only by the attorney's greater knowledge
> and experience with respect to such agreements, but also
> by the trust the client has placed in the attorney.

Id. at 528 (citations omitted). The court further held that the

provision's "enforcement would be unreasonable or unjust" given the

circumstances. The contract contemplated representation of a North

Carolina company in that state, by an attorney who, although

located in Texas, was licensed to practice in North Carolina. Id.

at 530.

Here, no attorney from ACDG explained the contract to the

plaintiffs. In fact, assuming it felt it had any such duty, it

appears that the firm delegated that responsibility to its non-

attorney Case Manager, Terry. Even he, however, did not explain

what the choice of law and venue provisions would mean in the event of a dispute.

The defendants rely on the following language near the end of their contract with the plaintiffs to establish that any failure to understand the agreement is the clients' responsibility:

> Please read this agreement carefully. It is important that our agreement be totally complete and that the undersigned understands everything before signing. <u>If you have any questions regarding this agreement now is the time to ask.</u> Once this agreement has been signed it will be concluded that the undersigned completely understands it.

(Dkt. 4-2 at 2. (emphasis in orginal).) A lawyer is free to draft such exculpatory language for a client, but not to shield himself with the legal fiction that, by signing a document, his client actually understands each provision. He cannot disclaim his burden to explain the agreement to the lay client.

The defendants urge the Court to interpret this contract as it would any other agreement to provide services. To do so, however, would ignore both the inherently unequal nature of the parties' positions and the duty of a lawyer to ensure his client understands the terms of the prospective representation. Because ACDG, Partipilo, and Terry failed in this duty, they failed to "reasonably communicate" the forum selection clause to the

plaintiffs.  <u>Caperton</u>, 679 S.E.2d at 236.  Accordingly, the
plaintiffs are not bound by its terms.


**E. The clause violates West Virginia public policy.**

Even if the clause had been adequately explained, the
agreement as written would preclude West Virginia courts from
supervising and sanctioning the conduct of attorneys practicing law
within the state.  To condone such evasion would substantially
undermine this state's ability to protect its citizens from
unscrupulous interlopers promising unrealistic results.

> In order to protect the public from being advised and
> represented in legal matters by unqualified and
> undisciplined persons over whom the courts could exercise
> little, if any, control, only duly-licensed persons
> meeting the qualifications for admission to the bar
> established by this Court are permitted to practice law
> in this State.

<u>State ex rel. Frieson v. Isner</u>, 285 S.E.2d 641, 650 (W.Va. 1981);
<u>see also</u> <u>Bates v. State Bar of Arizona</u>, 433 U.S. 350, 361
(1977)("[T]he regulation of the activities of the bar is at the
core of the State's power to protect the public.").  Although ACDG
never properly sought <u>pro</u> <u>hac</u> <u>vice</u> admission in the circuit court,
all practice of law, whether authorized or not,[9] is subject to the

---

[9]ACDG and Partipilo may have additionally violated W. Va. Code
§ 30-2-4 (unauthorized practice of law).

oversight of the Supreme Court of Appeals of West Virginia, both directly and through the West Virginia State Bar,[10] and must comply with the West Virginia Rules of Professional Conduct. Although the defendants argue strenuously that this action has no relation to the Supreme Court's authority to regulate the bar, the right of a private individual to seek redress for inadequate representation constitutes an important part of a multifaceted statutory, administrative and judicial scheme regulating attorneys. Cf. W. Va. State Bar v. Earley, 109 S.E.2d. 420, 429 (W. Va. 1959)(criminal penalties for unauthorized practice of law supplement, but do not replace, court's equitable power to enjoin such practice).

In Delaware CWC Liquidation Corp. v. Martin, 584 S.E.2d 473 (W. Va. 2003), the Supreme Court held that a client's assignment of a legal malpractice claim against his attorney is contrary to public policy and void as a matter of law. "Most courts view the unique personal nature of the relationship between an attorney and his client to be the most compelling public policy reason for

---

[10]The official Bar is a legislative creation within the province of the Supreme Court in its administrative capacity. W. Va. Code § 51-1-4a. "[T]he West Virginia State Bar, as an administrative arm of the Supreme Court of Appeals, is subject to the exclusive control and supervision of the Supreme Court of Appeals[.]" Daily Gazette Co. v. Committee on Legal Ethics, 326 S.E.2d. 705 (W. Va. 1984).

prohibiting the assignment of legal malpractice claims." <u>Id.</u> at 477 (<u>citing</u>, <u>inter alia</u>, <u>MNC Credit Corp. v. Sickels</u>, 497 S.E.2d 331, 334 (Va. 1998)(prohibiting such assignments "safeguards the attorney-client relationship which is an indispensable component of our adversarial system of justice")). The Supreme Court noted that one of its unique functions involves the regulation of that special relationship. <u>Delaware CWC Liquidation Corp.</u>, 584 S.E.2d at 478 ("Therefore, in considering whether legal malpractice claims should be assignable, this Court is ever mindful of its role in ensuring that the sanctity of this confidential relationship is preserved and protected."); <u>see also</u> <u>Sheetz, Inc. v. Bowles Rice McDavid Graff & Love, PLLC</u>, 547 S.E.2d 256 (W.Va. 2001)(answering certified questions from this Court in attorney malpractice case).

The state Supreme Court's responsibility and authority in this area has both constitutional and ancient underpinnings. In <u>Frieson</u>, Justice McGraw traced the courts' inherent power to regulate the bar from its common-law sources:

> In the English tradition, control over the bar became vested in the courts by improvisation rather than by design. Courts were the sole determiners of who would appear before them as attorneys, that is, as agents for others and officers of the court. In 1292, Edward I directed the judges of the Common Bench to select approximately 140 men to follow the court, leaving the exact number to their good judgment. In 1403, judges were instructed to examine all attorneys and appoint only

> qualified men to appear before them, while those guilty of improper conduct were disqualified. Similar provisions for the delegation of the power to discipline and admit to practice were made throughout English judicial history.
>
> . . .
>
> American courts adopted the customary practice of the English judiciary in exercising control over the practice of law. The traditional power began to be interpreted as inherent in the judiciary based on immemorial custom and what the courts interpreted as the practical necessities of the trichotomous separation of powers. The constitutional division of powers was not part of the English constitution, making the English judiciary's traditional control over the bar to be of limited relevance in this country. On this basis the American courts claimed that matters naturally within the orbit of a particular department of government were inherently subject to the authority of that department unless limited by the existence of a similar power in another department or by express constitutional provision. Thus, historical tradition decided that the power to regulate the practice of law was one naturally within the orbit of the judiciary as necessary to its survival and therefore an inherent power.

Frieson, 285 S.E.2d at 648 n. 1 (citations omitted). More recently, the framers of the Constitution of the State of West Virginia expressly imbued the Supreme Court with the "indisputable and exclusive authority to define, regulate and control the practice of law in West Virginia." Id. at 648 (citing Stern Bros. Inc. v. McClure, 236 S.E.2d 222 (1977); W. Va. Const. art. 8, § 3); see also W. Va. Code § 51-1-4a ("The inherent rule-making power of the supreme court of appeals is hereby declared.").

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS**

This Court must consider the public policy of West Virginia as interpreted by the Supreme Court of Appeals. Applying the policies set forth by that body, any attorney willing to undertake to represent a criminal defendant in West Virginia must make himself available to answer for his actions, or inaction, in the courts of this state, whether in the context of a disciplinary proceeding or in a civil suit to be tried before a jury of West Virginia citizens.

The Court need not hold in this case that a forum selection clause in an attorney-client contract could never be enforced. In a commercial or otherwise sophisticated contract, perhaps involving representation in multiple jurisdictions or no appearance in a West Virginia court, the parties might reasonably agree to resolve any disputes in a different arena. See, e.g., XR Co. v. Block & Balestri, P.C., 44 F.Supp.2d 1296 (S.D.Fla. 1999)(upholding forum selection clause drafted by Texas law firm in suit by Florida corporation regarding firm's representation during corporation's acquisition of publicly traded company).[11]

_____

[11]Cf. Delaware CWC Liquidation Corp., 584 S.E.2d at 479 (Although a "minority of jurisdictions" permit malpractice action assignments in some commercial contexts, the Court declined to distinguish between types of representation, holding simply that assignments of legal malpractice claims violated the public policy of the state).

<u>**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS**</u>

In <u>Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte</u>, 536 F.3d 439 (5th Cir. 2008), the Fifth Circuit upheld a forum selection clause in an attorney-client agreement related to the adoption, by South Carolina citizens, of a child born in Louisiana. In that case, however, the Louisiana attorney persuasively argued that the birth, adoption, and related legal proceedings necessarily took place in Louisiana.[12]

Here, ACDG and its agents agreed to represent Lael Brown in a criminal matter in West Virginia. This undertaking is of constitutional dimensions and implicates a core function of the judicial system, the provision of effective representation to all charged with criminal conduct. <u>See</u> Rule 44, Right to and Assignment of Counsel, W. Va. Rules of Criminal Procedure (1981, as amended)(<u>implementing</u> <u>Gideon v. Wainwright</u>, 372 U.S. 335 (1963)). Just as allowing the assignment of malpractice actions violates the public policy of this State, so too would allowing an attorney to avoid the scrutiny of West Virginia's courts after purporting to provide this type of representation.

---

[12]The <u>Ginter</u> Court rejected the argument, also advanced by the plaintiffs in this case, that a forum selection clause operates as an impermissible limitation on a lawyer's liability. The Court agrees that merely designating an alternative forum for resolution of a malpractice claim does not violate this prohibition.

### CONCLUSION

To enforce the forum selection clause in this case would allow a California attorney, his law firm, and its agents to engage in the practice of law in West Virginia and receive a fee without explaining their contract to their clients, and without entering a proper appearance in a criminal proceeding. They seek to avoid ever facing a West Virginia judge or jury to answer allegations of fraud, malpractice, and breach of contract. The enforcement of such a provision in this context would violate the strong public policy of West Virginia holding all attorneys who practice in this state accountable for their professional actions. Accordingly, the Court **DENIES** the motion to dismiss.[13]

It is so **ORDERED.**

---

[13]At least one non-resident defendant unsuccessfully persisted in attempting to avoid the West Virginia courts even after its forum selection clause was declared unenforceable. In <u>Woodmen of the World Life Ins. Soc. v. Yelich</u>, 549 N.W.2d 172 (Neb. 1996), an insurance company had moved to dismiss a wrongful termination suit filed against it in a West Virginia circuit court. That court, applying Nebraska law, denied the motion, holding that the forum selection clause was unreasonable. Undeterred, the insurance company filed a declaratory judgment action in Nebraska, seeking a ruling that the clause was, on the contrary, valid and enforceable. The Supreme Court of Nebraska held that this attempt "to circumvent a potentially unfavorable ruling" was impermissible where the West Virginia court had already ruled on the question at issue in the declaratory judgment action. <u>Id.</u> at 176.

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS**

The Court directs the Clerk to transmit copies of this Order to counsel of record.

DATED: October 8, 2010.

                              /s/ Irene M. Keeley
                              IRENE M. KEELEY
                              UNITED STATES DISTRICT JUDGE