IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**LAEL BROWN, LAVERNE WRIGHT-OCHOA,
CHARLES BROWNE, AND ROBERT WRIGHT,**

    **Plaintiffs,**

*vs*.                                                            **CIVIL ACTION NO. 1:10cv110**

**ANTHONY PARTIPILO, TODD TERRY, and
AMERICA'S CRIMINAL DEFENSE GROUP,
A PROFESSIONAL LAW CORPORATION,**

    **Defendants.**

## ORDER/OPINION

### I.

### Procedural History

The parties to this civil action are embroiled in a discovery dispute. Plaintiffs filed a complaint in state court which was removed to this court. Plaintiffs claim that Defendant's web site knowingly included statements and that Defendants knowingly made certain representations and omissions that were false and/or made with reckless disregard for the truth, that were material to induce and were relied on by Plaintiffs to their detriment in the hiring of ACDG and payment of its fees to represent their relative in a West Virginia criminal case. Plaintiffs' complaint asserts Fraud, Breach of Contract, Unreasonable and Unconscionable Fees, and Negligence as its causes of action. Plaintiffs also seek punitive damages.

September 16, 2010 Plaintiffs served their First Set of Combined Discovery Requests. Defendants served their responses on October 26, 2010. As a result of disputes arising from the requests and responses, the parties sought and received an extension of time to December 13, 2010.

Unable to resolve their discovery dispute within the time extension, Plaintiffs filed their

Motion To Compel Responses To Plaintiffs' First Set Of Combined Discovery Requests December 13, 2010 [DE 34].  Defendants filed the Response To Plaintiffs' Motion To Compel Discovery on January 14, 2011 [DE 38].  Plaintiffs filed a Rely To Defendants' Response To Plaintiffs; Motion To Compel Discovery on January 21, 2011 [DE 42].

In Defendants' response, Defendants agreed to produce the requested information or documents to Requests Nos. 1, 8, 9, 10, 11 and 15.

At issue are:

Request No. 2: Identify, as defined above, each and every individual who has filed a complaint with a state bar disciplinary organization against America's Criminal Defense Group, Anthony Partipilo, and/or a member of America's Criminal Defense Group's "unified team of experienced, knowledgeable criminal defense attorneys from across the country" and set forth the date or approximate date of the complaint.

Request No 3: Produce each and every complaint filed with a state disciplinary organization against America's Criminal Defense Group, Anthony Partipilo, and/or a member of America's Criminal Defense Group's "unified team of experienced, knowledgeable criminal defense attorneys from across the country."

Request No. 4: Produce each and every decision filed by any state bar disciplinary organization involving America's Criminal Defense Group, Anthony Partipilo, and/or a member of America's Criminal Defense Group's "unified team of experienced, knowledgeable criminal defense attorneys from across the country."

Request No. 5: For each lawsuit filed against America's Criminal Defense Group, Anthony Partipilo, and/or member of America's Criminal Defense Group's "unified team of experienced, knowledgeable criminal defense attorneys from across the country" by a client of America's Criminal Defense Group and/or an individual who paid America's Criminal Defense Group on behalf of a criminal defendant, produce:
    a.    A copy of the complaint;
    b.    A copy of any final verdict, settlement agreement, and/or judicial order in the case.

Request No. 19: Identify the individual(s) who have been responsible for creating, maintaining, and /or modifying the website of America's Criminal Defense Group for the period from January 1, 2005 to the present and, if the individuals responsible for the website have changed during that period, provide the dates that each individual was responsible for creating, maintaining, and/or modifying the website of America's Criminal Defense Group.

Request No. 20: Produce any and all text that was on the website prior to the date you

respond to this request but that was removed from the website and, for each such page of text, state the date the text was removed from the website, the person who requested that the text be removed from the website and the reason(s) that the text was removed from the website.

## II.

## Contentions of the Parties

**Defendants contend:**

With respect to Requests 2, 3 and 5 they are not required to produce the requested information because under Federal Rule of civil Procedure 26(b)(1), the requested information and documents are irrelevant. They claim the information sought is wholly unrelated to the instant action and the information sought is not reasonably calculated to lead to admissible evidence because Federal Rules of Evidence 404(b), 801, and 403 prevent admission. Moreover, Defendants contend Plaintiffs need not establish any of ACDG's "general business practices" to satisfy any element of their claims. Defendants complain Plaintiffs are overreaching and ACDG need not produce such unrelated and irrelevant information.

With respect to Request 4 and 5 they are not required to produce the requested information because the information is equally available from another more convenient source to Plaintiffs under Federal Rule of Civil Procedure 26(b)(2)(C)(i) (the relevant state bars) and the information is irrelevant and not reasonably calculated to lead to admissible evidence.

With respect to request 20 the requested information has already been produced and plaintiffs are not entitled to information that may have been on the web site and was removed prior to them going to the web site in 2008.

**Plaintiffs contend in their Reply:**

Defendants see the allegations against them too narrowly. They further contend that, in order to prove fraud, Plaintiffs are entitled to conduct discovery with respect to "motive, opportunity,

intent, preparation, plan, knowledge, identity, or absence of mistake or accident" pursuant to Federal Rule of Evidence 404(b); that the information may lead to witnesses even if the information itself is inadmissible; that the information is relevant to the truth of the advertised quality of the lawyers in the group; and that the information may be relevant to show that Defendants had prior knowledge of their deceptive practices but continued.

During Court's hearing on the motion, Defendants raised an issue whether intent was an essential element of the fraud claim pleaded by Plaintiff in the complaint. The parties were given additional time to file citations of law bearing on the issue. Plaintiffs' counsel filed "Supplemental Memorandum On Fraud" dated March 7, 2011 [DE 56] essentially pointing to the differences between actual fraud and constructive fraud. Defendants filed their "Supplement Re: Scope of Plaintiff's Fraud Claim" dated March 9, 2011 [DE 57] essentially arguing that Plaintiffs pled constructive fraud, not actual fraud, and that Rule 9(b) requires fraud to be strictly pled. Plaintiffs filed "Reply To Defendants' Supplemental Brief" dated March 9, 2011 [DE 58] arguing that a plain reading of the complaint filed "communicates to the reader that plaintiffs believe and intend to prove an intent to defraud."

### III.

### Discussion

**Sufficiency of Plaintiffs' Pleading**

F.R.Civ.P. 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake. Malice, intent, knowledge and other conditions of a person's mind may be alleged generally."

District Judge Stamp in the unreported decision: <u>Ayers v. Continental Casualty, Co</u>, 2006 WL 278540 NDWV, held: Courts have interpreted this rule to hold that a "plaintiff alleging fraud must

make particular allegations of the time, place, speaker, and contents of the allegedly false acts or statements." <u>Adams v. NVR Homes, Inc.,</u> 193 F.R.D. 243, 249-50 (2000).

Two types of fraud are recognized in West Virginia: constructive fraud and actual fraud.

> Constructive fraud "is a breach of a legal or equitable duty, which, irrespective of moral guilt of the fraud feasor, the law declares fraudulent, because of its tendency to deceive others, to violate public or private confidence, or to injure public interests." *Stanley v. Sewell Coal Co.,* 169 W.Va. 72, 285 S.E.2d 679, 683 (1981). ... In addition, constructive fraud is generally reserved for those cases where a fiduciary relationship exists between the parties or the fraud violates an important public policy concern. *See* \*490 *Miller v. Huntington & Ohio Bridge Co.,* 123 W.Va. 320, 15 S.E.2d 687, 695 (1941).
>
> In contrast to the constructive fraud claims of omission, the actual fraud claims remaining in Counts Five and Six assert that National actively misrepresented its policies and the conditions of employment for management positions. In West Virginia, the elements of a claim of fraudulent inducement of a contract are that: the allegedly fraudulent act was committed by the defendant; the act was material and false; the plaintiff justifiably relied upon the act; and the plaintiff was damaged because he relied upon it. *Lengyel v. Lint,* 167 W.Va. 272, 280 S.E.2d 66, 69 (1981).

"'Actual fraud' is intentional fraud and consists in deception, intentionally practiced to induce another to part with property or to surrender some legal right and which accomplishes the end designed." <u>Miller v. Huntington & Ohio Bridge Co.</u>, *supra* at 687.

"[T]he critical difference between actual fraud and constructive fraud is that the latter 'does not require proof of fraudulent intent.'" <u>Wilt v. State Auto Mut. Ins. Co.,</u> 203 W.Va. 165, 169 (1998). "Actual fraud is intentional, and consists of intentional deception to induce another to part with property or to surrender some legal right, and which accomplishes the end designed." <u>Stanley v. Sewell Coal Co.</u>, *supra* at 76.

Defendants assert that "[a]ctual and constructive fraud claims are two different claims and should be pled in the alternative" citing as an example <u>White v. Natl Steel Corp.</u>, 938 F.2d 474, 479 (4th Cir. 1991). On review, this is not what <u>White v. Natl Steel Corp.</u> held. To be clear, actual and constructive fraud claims are different claims. However, aside from noting that the unsuccessful

Plaintiffs in White v. Natl Steel Corp. had pled actual and constructive fraud in the alternative, Judge Wilkinson, writing for the Court in upholding the District Judge's dismissal of the constructive fraud claim and remanding the case to the district court to dismiss the actual fraud claim, did not do so from a defective pleading standpoint. The Court did not express an opinion that pleading them in the alternative was required. Instead, the ruling hinged on a conclusion that the District Judge was correct in concluding that the evidence was insufficient for the case to go to a jury with respect to the constructive fraud claim and that the evidence was insufficient for the actual fraud claim to be allowed to proceed. In so doing the Court concluded that the White Plaintiffs' fraud claims amounted to nothing more than breaches of contract - failures of expectations type claims which are not properly considered fraud claims.

Defendants also directed the Court to Bluestone Coal Corp. v. CNX Land Res. Inc., 2007 WL 6641647 (S.D.W.Va. 2007) in support of their overall conclusion that "Plaintiff's should have pled two separate counts -actual and constructive fraud - with particularity" and their specific conclusion that "a primary purpose of the strict pleading requirement in Rule 9(b) is to eliminate fraud actions in which all the particular facts are learned after discovery." District Judge Faber in Bluestone Coal Corp. v. CNX Land Res. Inc. dismissed Ronald G. Stovash as being an improperly joined defendant to defeat diversity and denied remand to the originating state court. The dismissal of Stovash was based on Judge Faber's determination that Bluestone's bad faith denial of option contract and fraudulent promise of performance claims were not pled with particularity and there did not appear to be pre-discovery evidence of facts sufficient to make such claims. Noting that pleading requirements are procedural in nature and are therefor governed by federal law [ see Garvin v. S. States Ins. Exch. Co., 329 F. Supp.2d 756, 760-761 (N.D.W.Va. 2004)], Judge Faber applied the strict pleading requirements of Rule 9(b) further noting that the "time, place, and contents of the false

representations, as well as the identity of the person making the misrepresentations and what he obtained thereby" was required. *Id.* citing Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999). "Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Id.* citing DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2nd Cir. 1987). Judge Faber noted that [c]omplaints that fail to meet these heightened pleading requirements are subject to dismissal..." However, if a defendant has been made aware of the particular circumstances for which he or she will have to prepare a defense at trial, and plaintiff has substantial prediscovery evidence of those facts, the Fourth Circuit has encouraged district courts to hesitate before dismissing. *Id.* citing Lasercomb Am., Inc. v. Reynolds, 911 F.2d 970 980 (4th Cir. 1990). The purpose of the strict pleading of fraud requirement is to provide defendant with not only fair notice of the claim but to protect him from harm to his reputation and goodwill. *Id.* citing Reingold v. Deloitte Haskins & Sells, 599 F.Supp. 1241, 1266 (S.D.N.Y. 1984).

Plaintiffs' complaint alleges a "First Cause of Action - Fraud". Paragraph 23 of that cause of action alleges: "The representations, as set forth above, were material and were made **for the purpose** of inducing the plaintiffs to retain ACDG and to pay its fees." [emphasis added by Court]. It is clear that the language of paragraph 23 is sufficient to put Defendants on notice that Plaintiffs are claiming actual fraud in their first cause of action. The language "generally" alleges " Malice, intent, knowledge and other conditions of a person's mind" as required under FRCivP 9. Moreover, the above quoted language from Paragraph 23 of the complaint is consistent with the requirement it "consist[] of intentional deception to induce another to part with property or to surrender some legal right, and which accomplishes the end designed." Stanley v. Sewell Coal Co., *supra* at 76.

When "First Cause of Action - Fraud" is read in totality, the count does not differentiate

between actual fraud or constructive fraud. Plaintiffs did not plead actual fraud and constructive fraud in the alternative. By reading Paragraph 24: "The representations, as set forth above, were false **and/or made with reckless disregard for the truth**" clearly indicate Plaintiffs are attempting to fit their allegations in to a constructive fraud claim. Rule 9(b) does not itself mandate alternative pleading of actual fraud and constructive fraud in separate counts.

Reading the complaint, the Court concludes Plaintiffs allege that: 1) at the time Plaintiffs were seeking representation for their relative 2) Wright-Ochoa observed statements on Defendant ACDG's web site to the effect as set forth in paragraphs 9(a), (b), (c), (d) and (e) of the state court complaint; (3) Defendant Terry made statements and failed to make disclosures to Wright-Ochoa, Browne and Wright (Plaintiffs) as set forth in paragraphs 11(a), (b), (c), (d), (e), (f) and (g) of the state court complaint; (4) "contrary to their representations, the defendants did not have a national law firm made up of experienced and skilled attorneys that practiced in West Virginia. [n]or did the defendants provide representation consistent with the promises on their website or those made by Mr. Terry."[1] [paragraph 12 of the state court complaint]; (5) "plaintiffs reasonably relied on the representations made by the defendants and retained the defendants to represent Lael Brown" [paragraph 14 of the state court complaint]; (6) the representations were made with the knowledge and support of ACDG and Partipilo [paragraph 22 of the state court complaint]; (7) the representations were material, false and / or made with reckless disregard for the truth and were made for the purpose of inducing the Plaintiffs to retain ACDG and to pay its fees [paragraphs 22, 23 and 24 of the state court complaint]; (8) and that plaintiffs were damaged as a result of their reliance on the misrepresentations of defendants [paragraph 29 of the state court complaint].

---

[1] The issue of whether any of the alleged misrepresentations are fraudulent or merely failed expectations in breach of contract is not before the Court.

For the reasons stated herein, the Court concludes that: the allegations of the state court complaint adequately apprise defendants of " the time, place, speaker, and contents of the allegedly false acts or statements." *Adams v. NVR Homes, Inc*, *supra;* the allegations sufficiently "state with particularity the circumstances constituting the fraud or mistake.  Malice, intent, knowledge and other conditions of a person's mind may be alleged generally." to meet the requirements of F.R.Civ.P. 9(b); while the better practice may be to plead actual fraud and constructive fraud alternatively in separate counts of a complaint, the rule does not require it; and Plaintiffs' allegations, read as a whole [Facts and First Cause of Action], are adequate and do plead the elements of constructive fraud and actual fraud alternatively in the same count [First Cause of Action - Fraud].

**Requests 2, 3 and 5**

Request No. 2 seeks the identity of each and every individual who had filed a complaint with a state bar disciplinary organization against America's Criminal Defense Group, Anthony Partipilo, and/or a member of America's Criminal Defense Group's "unified team of experienced, knowledgeable criminal defense attorneys from across the country" and the date or approximate date of the complaint.

Request No 3 seeks a copy of each and every complaint filed with a state disciplinary organization against America's Criminal Defense Group, Anthony Partipilo, and/or a member of America's Criminal Defense Group's "unified team of experienced, knowledgeable criminal defense attorneys from across the country."

Request No. 5 seeks for each lawsuit filed against America's Criminal Defense Group, Anthony Partipilo, and/or member of America's Criminal Defense Group's "unified team of experienced, knowledgeable criminal defense attorneys from across the country" by a client of America's Criminal Defense Group and/or an individual who paid America's Criminal Defense

Group on behalf of a criminal defendant, produce:

    a.       A copy of the complaint;

    b.       A copy of any final verdict, settlement agreement, and/or judicial order in the case.

In <u>Culbertson v. Jno. McCall Coal Co.</u>, 275 F.Supp. 662, 676 (DCWVa 1967), Judge Christie held:

> The law seems to be well settled that in civil cases, where fraud is an issue, evidence of other fraud of like character, committed by the same party, at or about the same time, is admissible to indicate a scheme, plan or design on his part broad enough to include the act in question. 20 Am.Jur. (Evidence) Sec. 303, pages 281-282, gives the general rule thusly:
>
>> 'The law in civil cases, as well as in criminal cases, permits proof of acts other than the one charged which are so related in character, time, and place of commission as to tend to support the conclusion that they were part of a plan or system or as to tend to show the existence of such a plan or system. Thus, when one's motive, malice, or ill will or his intention or good or bad faith in doing or omitting to do certain acts becomes an issue, his acts, statements, and conduct on other occasions which have a bearing upon his motive or intention upon the occasion in question are competent evidence. Where several forgeries were a part of the same transaction and tend to show a common plan or scheme, evidence of other forgeries or alterations is admissible upon an issue of forgery or alteration in a civil case. Where fraud is an issue, evidence of other similar frauds perpetrated by the same person on or about the same time, is admissible particularly where the acts are all part of one general scheme or plan to defraud.'
>
> In <u>States v. Riss & Co., Inc., 139 W.Va. 1, 80 S.E.2d 9,</u> it is said that,
>
>> 'In an action to recover the value of a cargo allegedly destroyed by fire following an accident, evidence of other accidents involving similar cargo, in which the cargo was allegedly destroyed by fire, which accidents occurred closely in point of time with the accident in question, is admissible under the defense of fraud to show a general plan or scheme or intent to defraud.'
>
> In the case of <u>Shingleton Bros. v. Lasure, 122 W.Va. 1, 6 S.E.2d 252,</u> Syl. 1, it is stated,
>
>> 'In a civil case there may be proof of acts other than the one involved if they be so related in character, time and circumstances as to tend to establish a plan or system inclusive of the act in suit.'

In the case of First National Bank of Pennsboro v. Barker, 75 W.Va. 244, 83 S.E. 898, Syl. 4 reads as follows:

'To prove, in a civil action, the perpetration of a criminal or fraudulent act by any person, evidence of other similar acts done by him, conduct on his part, importing the same and his admissions thereof are admissible, provided they are so connected in time, purpose and character as to indicate a scheme, plan or design on his part, broad enough to include the act in question.'

In the case of Piedmont Bank v. Hatcher, 94 Va. 229, 26 S.E. 505, the Court held that where fraud in the sale of property is an issue, evidence of other frauds of like character, committed by the same party, at or about the same time, is admissible. The Court held that large latitude is always given to the admission of evidence where the charge is fraud.

In the case of Miles F. Bixler Company v. Dunsmore, 109 W.va. 727, 156 S.E. 72, the Court held that evidence of an agent's fraud, in procuring a similar order, was admissible to corroborate defendant's testimony as to fraud.

In the case of Baldwin v. Warwick (C.C.A. 9th Cir), 213 F.2d 485, Syl. 3 reads as follows:

'In action by real estate dealer for damages on ground that defendants, pursuant to conspiracy between them, had defrauded dealer by trick and device inducing amnesia in him by means of drugged drinks with result that he had sustained gambling losses, testimony of other real estate men showing similar experiences they had had with defendants was admissible for limited purpose of showing existence of over-all scheme on defendants' part.'

In the case of Osborne v. Holt and Woodson, 92 W.Va. 410, Syl. 1, 114 S.E. 801 reads as follows:

'Evidence of similar representations, made to others, by one soliciting subscriptions to the capital stock of a corporation, to induce purchases of such property, are admissible in a suit for damages by one who purchases stock on the faith of fraudulent representations, not as evidence of the statements made to the plaintiff in such suit, but as showing the inclination of mind of the party charged with making the representations on the subject.'

In the case of Wilson v. Carpenter's Administrator, 91 Va. 183, 21 S.E. 243, a suit to cancel a contract on account of false representations by an agent, the Court held that evidence of similar statements made by the agent to other people at other times, though not competent to prove what occurred when the contract in question was made, might be 'introduced to show the bent of the agent's mind.'

Thus, the evidence offered by Culbertson, tending to show the practicing of fraud and deceit by McCall against Pine Oaks, in a similar transaction, over a similar period of time, and in the same general area, though not competent to prove the misconduct charged by Culbertson in the instant case, nevertheless is admissible for the purpose of showing 'the bent of the agent's (McCall's) mind,' or as said by the Court in the case of Osborne v. Holt, supra, for the purpose of 'showing the inclination of mind' of McCall, the agent.

Application of FRE 404(b), 801, and 403, where the same may be applicable in a civil case, at this juncture of the case is pre-mature. The Court has no way for the Court to know at this point what the evidence will be. Moreover, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence . ... subject to the limitations imposed by Rule 26(b)(2)(C)." [FRCivP 26)b)(1)].

The Court "[o]n motion or on its own, ... must limit the ...extent of discovery otherwise allowed by these rules or by local rule if it determines that ... the the burden or expense of the proposed discovery outweighs its likely benefit, ...." [FRCivP 26 (b)(2)(C)(iii).

In the instant case, Plaintiffs fail to tie their requests 2 and 3 to a specific time frame, to specific attorneys, to specific types or categories of claims. Instead, Plaintiffs seek blanket discovery of any and every complaint against any attorneys at any time in the attorneys' histories who have at any time been affiliated with the named Defendants in this case. An extreme example of the breadth of the requests is that Defendants would have to search and disclose every state disciplinary record for any complaint against any affiliated attorney during any period that attorney was in practice, including any letter complaint that may have been filed in a real estate transaction matter in the year after an attorney's admission to the bar. Such a dragnet for information is so broad that the expense in time and money is not justified by Plaintiffs' implied assertion of a need to know whether the Defendants were affiliating with attorneys steeped in criminal law practice and abilities from around the United States. It does not appear the Plaintiffs sought discovery of the names of criminal defense

attorneys affiliated with Defendants for any limited period leading up to the time frame out of which the instant cause of action arises. Nor does it appear that Plaintiffs sought discovery of whether Defendants had a system in place to "vet" affiliating attorneys prior to the alleged events that give rise to the instant cause of action. Certainly, Requests 2 and 3 are not tied to any specific attorneys or to any information that would have come from and been a part of Defendants' files as a result of a vetting process.

If as Defendants suggest, Plaintiffs seek the information in pursuit of prior complaints that may somehow be tied to Defendants' business practices, if at all relevant, the requests are not tied to Defendants' business practices. Instead, they go to affiliated attorneys practices. Plaintiffs did not even request specific information relative to the West Virginia attorney who was actually involved in Lael Brown's criminal case as Defendants' affiliate.

Moreover, Plaintiffs never address or account for how Defendants can disclose or the Court can order the Defendant to disclose information produced from potentially fifty or more jurisdictions that may be confidential and not subject to disclosure under State Disciplinary rules, particularly when they involve individuals who are not parties to this litigation.

Finally, if the Court were to order production of the materials requested and Defendants were able to produce the same, the Court could conceive Plaintiffs complaining they had been "dumped on" when Defendants produced mass documents for yet unknown numbers of attorneys over yet unknown periods for up to 50 different states.

This Court, on its own, will not condone a "fishing expedition" using massive dragged nets when Plaintiffs' fail to first bait a few well placed hooks to seek specific information that may be used to obtain relevant information essential to the proof of required issues at trial.

**Request No 4**

In Request No. 4 Plaintiffs seek the production of "each and every decision filed by any state bar disciplinary organization involving America's Criminal Defense Group, Anthony Partipilo, and/or a member of America's Criminal Defense Group's "unified team of experienced, knowledgeable criminal defense attorneys from across the country."

For the reasons stated with respect to Requests 2,3 and 5, this request is overly broad and the burden placed on Defendants outweighs the likely benefits to Plaintiffs considering the claims made in the case.

In addition, Defendants' appropriately argue FRCivP 26(b)(2)(C)(i): "... the court must limit ...discovery ... if it determines that: the discovery sought ... can be obtained from some other source that is more convenient, less burdensome, or less expensive ...."

With respect to Requests 4 and 5, the information sought is as readily available to the Plaintiffs and Defendants. To the extent Plaintiffs may argue Defendants know what attorneys they have affiliated with and Plaintiffs do not, that argument is without merit in that Plaintiffs may easily discover that kind of information from Defendants and then make focused inquiry to the states concerning the identified lawyers.

**Requests Nos 19 and 20**

Plaintiffs seek identification of those "individual(s) who have been responsible for creating, maintaining, and /or modifying the website of America's Criminal Defense Group for the period from January 1, 2005 to the present and, if the individuals responsible for the website have changed during that period, provide the dates that each individual was responsible for creating, maintaining, and/or modifying the website of America's Criminal Defense Group" and " any and all text that was on the website prior to the date you respond to this request but that was removed from the website and, for each such page of text, state the date the text was removed from the website, the person who

requested that the text be removed from the website and the reason(s) that the text was removed from the website."

During the hearing Plaintiffs acknowledged that ACDG did not exist as an entity prior to the Spring of 2007 and that its website did not exist until that date.

Accordingly, Requests 19 and 20 are admittedly overly broad in that they each seek information for a period when the information did not exist because ACDG did not yet exist.

The Court finds that if the requests were appropriately limited as to time, the information requested may be relevant and material to the allegations in Plaintiffs' complaint or may be likely to lead to admissible evidence.

Even though the Court is not in the habit of rewriting discovery requests, in light of the admitted over breadth of Requests 19 and 20, the Court reforms the same to require responses for only the period from the fall of 2007 ( September 20, 2007) through the date of the filing of the within complaint in State Court (September 16, 2010).

**ORDER**

For the reasons stated herein, **Plaintiffs' Motion to Compel [DE 34] responses to Requests 19 and 20 is GRANTED IN PART AND DENIED IN PART** and Defendants shall fully respond to and file supplemental responses to Requests 19 and 20 for the time frame from September 21, 2007 to September 16, 2010 within 20 days of the date of this Order.

For the reasons stated herein, **Plaintiffs' Motion to Compel [DE 34] responses to Requests 2, 3, 4 and 5 is DENIED.**

Not having substantially prevailed, Plaintiffs' motion for fees and costs is **DENIED**.

The Clerk is directed to provide counsel of record with copies of this order. The Clerk is further directed to remove DE 34 from the docket of motions actively pending before this Court.

**It is so ORDERED.**

Dated: April 22, 2011

                                              *John S. Kaull*
                                              JOHN S. KAULL
                                              UNITED STATES MAGISTRATE JUDGE